UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Felix Miguel Armijos, individually and on behalf all other employees similarly situated,<br><br>         Plaintiffs,<br><br>       - against -<br><br>Cositas Ricas Ecuatorianas, Corp. d/b/a El Pequeño Coffee Shop, Tasty Chaulafan Corp. d/b/a El Pequeño Coffee Shop, Carlos A. Segarra, and Juan Carlos Segarra,<br><br>         Defendants. | Case No. 1:19-cv-02893-FB-JO |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND STAY THE ACTION**

HANG & ASSOCIATES, PLLC
136-20 38th Avenue, Suite 10G
Flushing, NY 11354

## TABLE OF CONTENTS

| | | |
|---|---|---|
| Table of Authorities | | iii |
| Preliminary Statement | | 1 |
| Factual Background | | 2-3 |
| Arguments | | 4 |
| I. | THERE IS A GENUINE ISSUE OF FACT SURROUNDING THE PURPORTED AGREEMENT TO ARBITRATE | 4-5 |
| II. | THE ARBITRATION AGREEMENT WAS FRAUDULENTLY INDUCED | 5-7 |
| III. | THE ARBITRATION AGREEMENT IS PROCEDURALLY UNCONSCIONABLE | 7-11 |
| Conclusion | | 12 |

TABLE OF AUTHORITIES

*Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) .................................................. 4

*Brennan v. Bally Total Fitness*, 198 F.Supp. 2d 377 (S.D.N.Y. 2002) ............................................... 9, 11

*Choquette v Motor Info. Sys.,* 2017 US Dist LEXIS 121353 [SDNY Aug. 2, 2017, No. 15-CV-9338 (VEC)] .................................................. 7

*David v. No. 1 Mktg. Serv. Inc.*, 113 A.D.3d 810, 979 N.Y.S.2d 375, 378-79 (2d Dep't 2014). .................................................. 8

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d. Cir. 1999) .................................................. 8

*Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 F. App'x 551, 553 (2d Cir. 2009). .................................................. 8

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) .................................................. 7

*Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144, 893 N.E.2d 807, 863 N.Y.S.2d 391 (N.Y. 2008)). .................................................. 8

*Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 534 N.E.2d 824 (1988) .................................................. 8

*Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) .................................................. 4

*Manigault v. Macy's East, LLC,* 318 Fed. App'x 6, 7-8 (2d Cir. 2009) .................................................. 8

*Matter of Express Indus. & Term. Corp. v. N.Y. State Dept. of Transp.*, 93 N.Y.2d 584, 589 (1999) .................................................. 5

*Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d. Cir. 2000) .................................................. 7

*Molina v. Coca-Cola Enterprises, Inc.,* No. 08-cv-6370, 2009 U.S. Dist. LEXIS 47828, 2009 WL 1606433 (W.D.N.Y. June 8, 2009) .................................................. 10

*Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.,* 775 F.3d 145, 148 (2d Cir. 2014) .................................................. 4

*Opals on Ice Lingerie v. Bodylines Inc.,* 320 F.3d 362, 369 (2d Cir. 2003) .................................................. 4

*Oppenheimer & Co., Inc. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir. 1995) .................................................. 4

*Pimpinello v. Swift & Co.,* 253 N.Y. 159, 162-63, 170 N.E. 530 (1930) .................................................. 10

*Ragone v. Atlantic Video at Manhattan Ctr.,* 595 F.3d 115, 122 (2d Cir. 2010) .................................................. 9

*Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 67, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) .................................................. 4

*Ross v. American Express Co.,* 478 F. 3d 96, 99 .................................................. 7

*Sablosky v. Edward S. Gordon Co., Inc.,* 73 N.Y.2d 133, 137, 535 N.E.2d 643, 538 N.Y.S.2d 513 (1989) .................................................. 6

*Sinnett v. Friendly Ice Cream Corp.,* 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004)) .................................................. 6

*State v. Wolowitz*, 96 A.D.2d 47, 468 N.Y.S.2d 131, 145 (1983) .................................................. 8

*Teah v. Macy's Inc.,No.* 11-CV-1356, 2011 U.S. Dist. LEXIS 149274 .................................................. 6

*Thomson-CSF, S.A. v. American Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) .................................................. 7

*Valdes v. Swift Transp., Co.*, 292 F. Supp.2d 524, 533 (S.D.N.Y. 2003) .................................................. 11

*Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-cv-8878(CM), 2015 U.S. Dist. LEXIS 61421 (S.D.N.Y. May 6, 2015) ................................................... 9

**PRELIMINARY STATEMENT**

Plaintiff, Felix Miguel Armijos, (hereinafter, "Plaintiff" or "Armijos"), by and through his undersigned attorneys, Hang & Associates, PLLC, hereby respectfully submits this Memorandum in Opposition to the Defendants' Motion to Compel Arbitration and Stay the Action.

This action was originally commenced by Plaintiff Armijos on May 15, 2019 against Cositas Ricas Ecuatorianas, Corp. d/b/a El Pequeño Coffee Shop, Tasty Chaulafan Corp. d/b/a El Pequeño Coffee Shop, Carlos A. Segarra ("C. Segarra"), and Juan Carlos Segarra ("J.C. Segarra"), (collectively "Defendants").  Plaintiff Armijos was employed by Defendants as a dishwasher and then cook starting on or about January 1, 2003 to February 7, 2019. (Armijos Decl. ¶ 2-3). The Complaint alleges that Defendants failed to pay Plaintiff minimum wage and overtime wages for hours worked in excess of forty hours per week in violation of the Fair Labor Standard ("FLSA") and the New York Labor Law ("NYLL").  In addition, Plaintiff alleges that he was not paid spread of hours pay in violation of the NYLL and was not provided with notice of wages upon hire, nor received pay statements with each payment in violation of the New York Wage Theft Prevention Act.

After the end of the Plaintiff's employment with Cositas Ricas Ecuatorianas, Corp. d/b/a El Pequeño Coffee Shop (hereinafter "Cositas Ricas"), on or around January 6, 2019, Plaintiff Armijos executed two (2) pages. (Armijos Decl. ¶ 11), which he subsequently found out were Arbitration Agreements ("Agreements") between himself and both Defendant corporations (the Agreements are annexed to Baugh Corbett Aff. as "Exhibit A"). Defendants now seek to compel arbitration pursuant to those Agreements.  Plaintiff opposes the Defendants' motion on the grounds that: (i) the agreements were fraudulently induced and

are procedurally unconscionable on the basis that Plaintiff was only given the last page of each Agreements for him to sign; (ii) both the purpose of the Agreements and the reason Plaintiff was required to sign the Agreements were misrepresented by the Defendants to Plaintiff; and, (iii) Plaintiff was required to sign the two pages without first having the opportunity to have them translated to him into his native language.

## FACTUAL BACKGROUND

Plaintiff Armijos was employed to work at Defendants' restaurants from on or about January 1, 2003 to February 7, 2019. (Armijos Decl. ¶ 2-3). From on or around January 1, 2003 to on or around November 30, 2018, Plaintiff worked for Defendant Cositas Ricas, then from on or around December 1, 2018 until February 7, 2019, Plaintiff worked for Defendant Tasty Chaulafan. (Armijos Decl. ¶ 2-3). During Plaintiff's employment with the Defendants' restaurants, Plaintiff's job duties and responsibilities as a cook involved preparing meals at the restaurant daily. Plaintiff's duties neither required him to speak, read or understand English. (Armijos Decl. ¶ 6).

Approximately one week before January 6, 2019, Defendant J.C. Segarra went to the kitchen at Tasty Chaulafan, where the Plaintiff and other employees worked, and told all the employees that they would be required to sign some documents for the Department of Labor (DOL). (Armijos Decl. ¶ 7). J.C Segarra then asked Armijos to accompany him to the dining room at Tasty Chaulafan; he presented Armijos with two (2) loose leaves of paper and asked Armijos to take a seat and sign the areas he indicated on the two (2) pages. (Armijos Decl. ¶ 8).

Plaintiff immediately realized that the pages were not in English and asked J.C. Segarra what they were for and why he needed to sign the pages. (Armijos Decl. ¶9). J.C Segarra then advised Armijos that the DOL may visit the Defendants' establishment soon and they needed to know how many people worked at the establishment. (Armijos Decl. ¶ 10). Relying on this explanation, Plaintiff Armijos proceeded to print his name above the employee name and signed below his name, all of which took around ten (10) minutes. (Armijos Decl. ¶ 11).

After the Plaintiff signed the pages, he noticed that J.C. Segarra called Luis, another cook at the Defendants' establishment, to also sign some pages. (Armijos Decl. ¶ 12). After Luis finished speaking to J.C Segarra, Luis asked Plaintiff Armijos if he knew why the Defendants needed their signatures. (Armijos Decl. ¶ 13). Plaintiff then realized, after speaking with Luis, that J.C. Segarra gave them the same explanation- i.e. that the DOL would be visiting the restaurant and they needed to know how many people worked there. (Armijos Decl. ¶ 13).

Prior to the Plaintiff signing the pages handed to him by J.C. Segarra, J.C. Segarra never explained the pages that the Plaintiff signed to the Plaintiff, even though the pages were in English and J.C. Segarra was aware that Plaintiff does not speak, read or understand English. (Armijos Decl. ¶ 15). Plaintiff Armijos was never provided with a copy of the pages he signed. (Armijos Decl. ¶ 16). Most significantly, Plaintiff never had any opportunity to determine its contents, or understand its implications through the assistance of a third party. (Armijos Decl. ¶ 17).  Consequently, Plaintiff had absolutely no way of knowing that he would be forfeiting his right to bring a claim in Court. (Armijos Decl. ¶ 18).

**ARGUMENTS**

**I.    THERE IS A GENUINE ISSUE OF FACT SURROUNDING THE PURPORTED AGREEMENTS TO ARBITRATE**

Plaintiff respectfully accepts that the Court's inherent statutory power to compel arbitration, or not, is governed by the Federal Arbitration Act; Plaintiff submits, however, that there exist undeniable grounds at law and/or in equity for the revocation of the Agreements in question. *9 U.S.C. § 2.* As declared by the Court of Appeals for the Second Circuit, whether the Court compels arbitration, or not, turns on whether there is a valid and enforceable contract or whether "there is an issue of fact as to the making of the agreement for arbitration", which then requires a trial. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "Arbitration agreements are considered contracts." *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co., 775 F.3d 145, 148 (2d Cir. 2014)* (citing *Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)*). Accordingly, "though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute." *Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 369 (2d Cir. 2003)*.

When analyzing a motion to compel arbitration, courts must utilize a standard similar to that applied to motions for summary judgment; "if there is a genuine issue of fact surrounding the purported agreement to arbitrate, the court cannot compel arbitration". *Kutluca v. PQ N.Y. Inc., 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) (citing Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003))*. The Plaintiff in the instant action strongly opposes the Defendants' motion to compel and the evidentiary facts posited by Defendants and submits his own evidentiary facts "showing that there is a dispute of fact to be tried." *Oppenheimer &*

4

*Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). The genuine issues of fact in this case before the Court are the very hindrances to the existence of a valid and enforceable agreement to arbitrate. At no point in time did the parties in the instant action form a contract because there was never agreement or consensus between the parties as to the subject matter of the contract. The purpose of the "agreement" was never communicated to the Plaintiff which thereby precluded the possibility of acceptance by the Plaintiff or any meeting of the minds. (Armijos Decl. ¶ 8-11).

A valid arbitration agreement requires "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement[.]" *Matter of Express Indus. & Term. Corp. v. N.Y. State Dept. of Transp.*, 93 N.Y.2d 584, 589 (1999). Here, the only facts sufficiently definite between and common to both parties were that the Defendant J.C. Segarra asked Plaintiff to sign an agreement and Plaintiff did as instructed, (Armijos Decl. ¶ 11), the evidence of which is the subject matter of this motion. For these and the following reasons, Plaintiff Armijos asserts that the issues of fact surrounding the Agreements are not only genuine, but they effectively negate the validity and enforceability of the Agreements.

II. **THE ARBITRATION AGREEMENT WAS FRAUDULENTLY INDUCED**

"The United States Court of Appeals for the Second Circuit has articulated four criteria to determine whether proceedings should be stayed pending arbitration or dismissed, as the case may be. A district court must assess each of the following: (1) whether the parties have agreed to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) if federal statutory claims are at issue, whether Congress has intended such claims to be non-arbitrable; and (4) if only some of the claims are arbitrable, whether to stay

5

the balance of the proceedings pending arbitration". *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004).

As previously stated, Plaintiff submits that the parties never agreed to arbitrate, (Armijos Decl. ¶ 8-11). Defendants have cited the case, *Teah v. Macy's Inc.,No.* 11-CV-1356, 2011 U.S. Dist. LEXIS 149274 at *5 (E.D.N.Y. Dec. 29, 2011) (see Defendants ' Memorandum of Law in Support of their Motion to Compel Arbitration and Stay the Action, hereinafter "Def. Memo." Page 6), which declared there was "clearly adequate consideration for the arbitration agreement, as it binds both parties to arbitrate their claims, and formed part of a valid employment agreement (citing *Sablosky v. Edward S. Gordon Co., Inc.,* 73 N.Y.2d 133, 137, 535 N.E.2d 643, 538 N.Y.S.2d 513 (1989) ("If there is consideration for the entire agreement that is sufficient; the consideration supports the arbitration option, as it does every [*15] other obligation in the agreement.").

Defendants, in their Memorandum in Support of Motion to Compel Arbitration, state that Plaintiff "executed an Arbitration Agreement with both of his employers defendants Cositas Ricas Ecuatorianas, Corp. and Tasty Chaulafan Corp. on January 6, 2019, affirming his commitment as a condition of employment...", (Def. Memo. Page 3). In reality, Plaintiff Armijos was required to sign the agreements to arbitrate with both corporate Defendants, Cositas Ricas Ecuatorianas, Corp. s/b/a El Pequeño Coffee Shop hereinafter "Cositas Ricas") and Tasty Chaulafan Corp. d/b/a El Pequeño Coffee Shop (hereinafter "Tasty Chaulafan") on or around January 6, 2019 (Armijos Decl. ¶ 4). This occurred after the change of corporate ownership and effectively after his employment with Cositas Ricas (Armijos Decl. ¶ 4). Plaintiff Armijos did not sign the Agreement with Cositas Ricas in consideration for his employment as his employment had already been effectively terminated. (Armijos Decl. ¶ 4).

6

Under New York law, to state a claim for fraud in the inducement, "a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Choquette v Motor Info. Sys.,* 2017 US Dist LEXIS 121353 [SDNY Aug. 2, 2017, No. 15-CV-9338 (VEC)].

Here, Plaintiff submits that Defendant J.C. Segarra misrepresented the purpose of the "agreement" Plaintiff was asked to sign. (Armijos Decl. ¶ 10). J.C. Segarra failed to mention to the Plaintiff that the document he would be signing was an agreement to arbitrate, (Armijos Decl. ¶ 10), which would effectively terminate his rights to bring an action against Defendants in a court of law. Instead, J.C. Segarra misrepresented to the Plaintiff that the purpose of the agreement was so that Defendants would be in compliance the requirements of the DOL. (Armijos Decl. ¶ 10). Without any reason to assume otherwise, Plaintiff relied on the statement by J.C. Segarra and signed the papers (Armijos Decl. ¶ 11), the result of which was to preclude Armijos from bringing suit against Defendants in a court of law.

**III.     THE ARBITRATION AGREEMENT IS PROCEDURALLY UNCONSCIONABLE**

A party seeking to compel arbitration must establish the existence of an agreement to arbitrate under ordinary principles of contract law. See, e.g., *Ross v. American Express Co.*, 478 F. 3d 96, 99 (2d Cir. 2007) (citing *Thomson-CSF, S.A. v. American Arb. Ass'n,* 64 F.3d 773, 779 (2d Cir. 1995)). Whether the parties agreed to arbitrate a certain matter is governed by state-law principles regarding contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *Mehler v. Terminix Int'l Co.*, 205 F.3d

7

44, 48 (2d. Cir. 2000). "It is 'well settled' under New York one will not be compelled absent the parties' 'clear, explicit and unequivocal agreement to arbitrate.'" *Manigault v. Macy's East, LLC,* 318 Fed. App'x 6, 7-8 (2d Cir. 2009) *(quoting Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144, 893 N.E.2d 807, 863 N.Y.S.2d 391 (N.Y. 2008)). Where there was no "meeting of the minds," an arbitration agreement cannot be enforced. *Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 F. App'x 551, 553 (2d Cir. 2009).

One defense to contract formation under New York law is unconscionability. A contract is unconscionable where it is "so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 534 N.E.2d 824 (1988). In order for a party to successfully assert the defense of unconscionability, generally there must be a showing of both procedural and substantive unconscionability. *Id.* "The procedural element concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se." *State v. Wolowitz*, 96 A.D.2d 47, 468 N.Y.S.2d 131, 145 (1983); *see also*, *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d. Cir. 1999) ("A contract or clause is unconscionable when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably unfavorable to the other party.") Furthermore, "procedural and substantive unconscionability operate on a sliding scale; the more questionable the meaningfulness of choice, the less imbalance in a contract's term should be tolerated." *David v. No. 1 Mktg. Serv. Inc.*, 113 A.D.3d 810, 979 N.Y.S.2d 375, 378-79 (2d Dep't 2014). While inequality in bargaining power is not sufficient alone, coupled with high

8

pressure tactics that coerce an employee's acceptance of onerous terms, this may be sufficient to show that an employee lacked a meaningful choice. *Id*.

In evaluating where a contract is procedurally unconscionable courts look to whether there was any evidence of high pressure or deceptive tactics, the use of fine print, and any disparity in experience and education. *Brennan v. Bally Total Fitness*, 198 F.Supp. 2d 377 (S.D.N.Y. 2002). In *Brennan*, the Court held that the arbitration agreement was procedurally unconscionable where the plaintiff only had about fifteen minutes to sign the arbitration agreement *(Id. at 384)* and was threatened by her employer that those who did not sign would not be promoted, causing the plaintiff to believe that her employment would be adversely impacted if she refused to sign the agreement *(Id. at 383)*. The court in *Brennan* held that "the plaintiff lacked a meaningful choice in deciding whether to sign the agreement".

In this case, the arbitration agreement is clearly procedurally unconscionable. Here, Plaintiff was presented with a contract in a language that he did not understand (Armijos Decl. ¶ 9) and provided with an explanation that the DOL would be visiting the Defendants' establishment (Armijos Decl. ¶ 10). Believing this to be true, Armijos was then required to sign the Agreements without first being provided an opportunity to have the documents translated to him or the opportunity and time to have another explain and translate same to him. (Armijos Decl. ¶ 17). In fact, the Plaintiff was required to sign the documents immediately upon them being provided to him by J.C. Segarra, the entire process taking about ten (10) minutes. (Armijos Decl. ¶ 11).

Admittedly courts have found that an inability to speak English alone is insufficient for a determination of unconscionability. *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-cv-8878(CM), 2015 U.S. Dist. LEXIS 61421 (S.D.N.Y. May 6, 2015) See, *Ragone v. Atlantic Video*

9

*at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010) ("New York courts have repeatedly ruled that even the fact that a prospective employee possesses an imperfect grasp of the English language will not relieve the employee of making a reasonable effort to have the document explained to him.") *See also; Molina v. Coca-Cola Enterprises, Inc.,* No. 08-cv-6370, 2009 U.S. Dist. LEXIS 47828, 2009 WL 1606433 (W.D.N.Y. June 8, 2009) (Finding that, even where a Plaintiff is entirely incapable of reading English "his signature on the ...arbitration agreement would still be binding against him as his execution of an agreement of this type under such circumstances constitutes gross negligence, since he failed to seek proper assistance in understanding it before signing.").

What distinguishes this case from those cited above, however, was that Plaintiff Armijos was foreclosed from having the opportunity to have the Agreements translated to him. "If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him" *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162-63, 170 N.E. 530 (1930). Here, Plaintiff was not provided with the opportunity to have another read the Agreements to him (Armijos Decl. ¶ 17). The fact that Plaintiff did not even have the opportunity to procure it to be read to him, due to the haste in which the documents were provided and his signature required, (Armijos Decl. ¶ 11), cannot cause a finding of negligence which would permanently bind the Plaintiff. Plaintiff Armijos was instructed to sign the document immediately, presumably meaning that he could not take the document home with him or seek to have it translated (Armijos Decl. ¶ 10, 17).

Because the agreement was provided to the Plaintiff in a language incomprehensible to him, and because he was not provided with a reasonable opportunity to read and/or have

10

the document translated, in addition to the inherently unequal bargaining power between employees and employers, the agreement is procedurally unconscionable. See e.g., *Valdes v. Swift Transp., Co.*, 292 F. Supp.2d 524, 533 (S.D.N.Y. 2003) (Courts take into consideration whether an individual is already employed by the employer when the employee signs the arbitration agreement, and whether signing is a condition of continued employment; findings that current employees are subject to greater coercive pressures that prospective employees). As previously mentioned, Plaintiff Armijos was already employed by the Defendants when he was asked to sign the Agreements (Armijos Decl. ¶ 8-11).

As for substantive unconscionability, a contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom unconscionability is claimed. *Brennan*, 198 F Supp.2d at 381-382. In this case the arbitration agreement is clearly designed to dissuade and/or prevent the Plaintiff and other employees from filing claims against the corporate Defendants. Furthermore, the Defendants are now attempting to foreclose Plaintiff and prospective Plaintiffs from pursuing their claims should the case proceed to arbitration. Therefore, the clear motivation of Defendants was to ensure that as few employees as possible brought claims under the FLSA, in clear contrast to the overarching public policy motivations behind that law.

In light of the fact that the arbitration agreement is both procedurally and substantively unconscionable, the agreement should be declared void.

11

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court deny the Defendants' Motion to Compel Arbitration and Stay the Action, and for all other relief this court may deem just and proper.

Dated: November 26, 2019
Flushing, New York

                                       /s/ *Zindzi Baugh Corbett*
                                      Zindzi Baugh Corbett, Esq.
                                      Hang & Associates, PLLC
                                      136-20 38th Avenue, Suite 10G
                                      Flushing, NY 11354
                                      (718) 353-8588